UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RAYMON TYRELL MATTISON,

    Defendant.
_____/

Case No: 25-20013

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS [23]**

Defendant Raymon Mattison has been charged with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 16.) The matter is before the Court on Defendant's motion to suppress evidence seized during a vehicle search following a traffic stop on November 17, 2024. (ECF No. 23.) The Government opposes the motion. (ECF No. 27.) Defendant filed a reply. (ECF No. 28.) The Court held a hearing on June 24, 2025.

Defendant argues the evidence must be suppressed because the Detroit Police officers unreasonably extended the time to complete the traffic stop without a reasonable suspicion of criminal activity, and Defendant's consent to a search of the vehicle was coerced because of the officers' repeated requests to search the vehicle and their implied threats to tow it. (ECF No. 23.) For the reasons below, the Court GRANTS Defendant's motion.

**I.    Background**

1

This case arises out of a traffic stop of Defendant and subsequent search of the vehicle he was driving, which belongs to his girlfriend. (ECF No. 23, PageID.56-57.) Detroit Police Officers James Stewart, Alexus Jones, and Charnequa Jackson observed Defendant driving and pulled him over on suspicion of the vehicle being uninsured and having defective lamps over the license plate. (ECF No. 23-1, PageID.74.) Defendant initiated a phone call with his girlfriend at the outset of the stop. (ECF No. 23, PageID.56.) Shortly after Officers Stewart and Jones approached the front of Defendant's vehicle for his driver's license and other information, Officer Stewart asked if there was "anything in the car I need to know about?" (ECF No. 26, PageID.85.) Defendant responded "no," and Officer Stewart asked for consent to search the vehicle, to which Defendant responded by asking if the officers had the right to search. *Id.* Officer Stewart responded, "[y]eah. You got the right to not let us. We also have the right to tow [the car] for no insurance." *Id.* The officers then returned to their squad car to run Defendant's information through the law enforcement information network ("LEIN").

Unbeknownst to Officers Stewart and Jones, while the officers were running a LEIN search, Officer Jackson observed Defendant move one of his hands and move the steering column up and down. (ECF No. 27, PageID.103.) Officer Jackson believed this movement was made to conceal contraband near the steering wheel. *Id.* Officer Jackson testified that she did not inform her colleagues of her observations as they returned to Defendant's vehicle. After the officers returned to the vehicle, Defendant, who was still on the phone with his girlfriend, informed Officer Stewart of his girlfriend's hope that the car would not to be towed. (ECF No. 26, PageID.86.) Officer Stewart

2

responded, "[m]mm. That'd be crazy if we did, right?" *Id.* At this point, Officer Jones interjected, "we only here for one thing for real. So let's just be honest. Do you mind if we search your car to make sure you don't have any weapons?" (ECF Nos. 26, PageID.92; 23, PageID.64.) Officer Jones testified that the "one thing" was a weapon. This time, when asked again, Plaintiff agreed to let the officers search the vehicle. Officer Stewart and then Officer Jackson searched the vehicle, the latter finding a firearm hidden in the steering column, and Defendant was arrested.

II.     **Legal Standard**

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects,' including vehicles, 'against unreasonable searches and seizures.'" *United States v. Snoddy*, 976 F.3d 630, 632 (6th Cir. 2020) (quoting U.S. Const. amend. IV). In the first instance, officers can validly stop a vehicle without a warrant if they have probable cause to believe the driver committed a civil traffic violation. *Cruise-Gulyas v. Minard*, 918 F.3d 494, 496 (6th Cir. 2019). To exceed the scope or duration of a traffic stop, an officer must have a "reasonable suspicion to continue the stop on unrelated grounds." *United States v. Whitley*, 34 F.4th 522, 529 (6th Cir. 2022) (quotation marks omitted) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). "Reasonable suspicion requires 'more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause.'" *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (quoting *Dorsey v. Barber,* 517 F.3d 389, 395 (6th Cir. 2008)).

Uncompleted traffic stops can also turn into unreasonable seizures if the officers have unreasonably extended the traffic stop via extraneous questioning or investigation

into unrelated matters. *United States v. Stepp*, 680 F.3d 651, 662 (6th Cir. 2012). The Sixth Circuit has adopted this rule because, otherwise, "a crafty officer . . . may simply delay writing a ticket for the initial traffic violation until after she has satisfied herself that all of her hunches were unfounded . . . ." *Id.* Courts "evaluate the reasonableness of . . . prolonging . . . a stop by considering the totality of the circumstances, which requires considering both the duration of the extraneous questioning and its subject matter." *Id.*

Regarding the search, consent must be freely and voluntarily given, and the Government has the burden to show this by a preponderance of the evidence. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 227 (1973); *see also United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998) ("[t]he Government bears the burden of proving . . . by 'clear and positive' testimony that the consent was 'unequivocal, specific, intelligently given and not influenced by any duress or coercion") (quoting *United States v. Taylor*, 956 F.2d 572, 577 (6th Cir. 1992)). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."

### III.     Analysis

#### A.     Whether the Length of the Traffic Stop was Reasonable

Here, the officers could have concluded the stop when they returned to Defendant's vehicle by issuing him a ticket, initiating the procedure to tow it, or sending him on his way. Instead, Officer Stewart informed Defendant he had outstanding warrant(s) for unpaid parking or traffic ticket(s) and remarked it would be "crazy" if the officers towed the vehicle. (ECF No. 26, PageID.86.) Officer Jones then asked again if Defendant had any weapons in the car and if he would consent to a search. *Id.* These

4

interactions were on an altogether different subject matter from the bases for the traffic stop. See Stepp, 680 F.3d at 662. Although the interactions only lasted approximately fifty seconds, all of it was extraneous to the officers completing the stop. Officer Jones even told Defendant at this point that the officers were "only [there] for one thing," which was to search for weapons — not complete the traffic stop. Accordingly, the officers unreasonably prolonged the traffic stop and conducted an unreasonable seizure of Defendant in violation of the Fourth Amendment.

At the hearing, the Government argued the collective knowledge doctrine gave the officers a reasonable suspicion or probable cause to prolong the stop and search the vehicle for weapons. This is because Officer Jackson saw Defendant move his hands and the steering column in a way that suggested he was hiding contraband despite the fact she did not communicate her observations to the other officers present until after the search was complete. The Government argues the doctrine as laid out in a decision from the Fourth Circuit supports such an application. However, the Fourth Circuit "limits application of the doctrine to cases where the search or arrest is directed by an officer who himself has sufficient knowledge to amount to probable cause," and "it does not apply outside the context of communicated alerts or instructions." United States v. Ferebee, 957 F.3d 406, 411 (4th Cir. 2020) (internal quotation marks omitted) (quoting United States v. Massenberg, 654 F.3d 480, 493 (4th Cir. 2011)). Thus, while the Court declines to adopt an application of the collective knowledge doctrine as expansive as the one the Government advocates for, the Fourth Circuit would likewise not apply it here

where Officer Jackson did not communicate any observations to anyone nor communicate any alerts or instructions before the search.[1]

B.    **Whether the Consent was Voluntary**

As discussed above, toward the beginning of the traffic stop, in response to Defendant asking if the officers had the right to search the vehicle, Officer Stewart responded, "[y]eah. You got the right to not let us. We also have the right to tow it for no insurance." (ECF No. 26, PageID.85.) This began the officers communicating an implied threat that they would tow his girlfriend's car unless he allowed them to search the vehicle for weapons and coercing his consent. The force of coercion grew as the officers repeated requests to search the vehicle upon returning to it after running a LEIN search. This culminated in the exchange where Defendant was still on the phone with his girlfriend when the officers returned to his vehicle and Officer Jones informed Defendant that the officers were only there for weapons. (ECF Nos. 26, PageID.92; 23, PageID.64.) Defendant's consent at this point was not freely given. It was the result of his choice to decline being constrained by the officers' implied threat they would tow the vehicle if he did so and the concomitant costly inconvenience. *See Bustamonte*, 412 U.S. at 228 ("the Fourth . . . Amendment[] require[s] . . . consent not be coerced, by explicit or implicit means, by implied threat or covert force").

The Government cites to *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998), in support of their argument that the officers' statements regarding towing the car do not

---

[1] Officer Jackson testified that she did not communicate her observations or suspicion to the other officers out of concern for officer safety because doing so in plain language might be heard by Defendant and escalate the situation. She further testified she had not worked with the other officers before that night, so she did not know how to communicate in code. However, there were several ways to communicate the information without alerting Defendant to her suspicions, including whispering or getting at least one of the officers back in the squad car to tell them and for them to pass the information along. Concerns for officer safety cannot validate the questionable search.

make the consent involuntary. (ECF No. 27, PageID.107-08.) There, the Sixth Circuit held the agents' statements they would secure a search warrant if the defendant did not consent to a search because they believed they had enough information to get a warrant did not render the consent involuntary because they were not "baseless or a pretext to coerce . . . ." *Salvo*, 133 F.3d 943 at 954-55. The Government argues the same result should be reached here because the officers' statements they could tow the vehicle were true because they had discretion to tow the vehicle for lack of insurance. (ECF No. 27, PageID.108.) There might be limited parallel between *Salvo* and this case if the officers here strictly intended to exercise their discretion and tow the vehicle irrespective of a consent to search the vehicle for weapons. Even then the comparison falls apart because the officers here did not need a magistrate's blessing to tow the car absent consent from the defendant because they had discretion to do so when finding an uninsured vehicle. In other words, in *Salvo*, the officers were discussing their ability to eventually do a search whether the defendant consented or not, and consent was given to do the exact thing the officers were saying they could do with or without consent. Here, the officers were saying they could do one thing, but they were seeking consent to do another in saying so. The officers' statements regarding their ability to tow the vehicle were pretext to get consent for a search. The officers' implied threats to tow the vehicle if they were not given permission to search it and their repeated requests for consent to search the vehicle limited Defendant's choice to decline and coerced him into giving consent.

**IV.    Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's motion to suppress all tangible evidence seized during and as a result of the vehicle search.

SO ORDERED.

                                                s/ Nancy G. Edmunds
                                                Nancy G. Edmunds
                                                United States District Judge

Dated: July 10, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 10, 2025, by electronic and/or ordinary mail.

                                                s/ Marlena Williams
                                                Case Manager